[Cite as *State v. Valdez*, 2018-Ohio-1768.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PUTNAM COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO.  12-17-11

      v.

RENE A. VALDEZ,                O P I N I O N

      DEFENDANT-APPELLANT.


Appeal from Putnam County Common Pleas Court
Trial Court No. 2016 CR 80

Judgment Affirmed

Date of Decision:   May 7, 2018


APPEARANCES:

    *Michael J. Short* for Appellant

    *Katherine G. Porter* for Appellee

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Rene Valdez ("Valdez"), appeals the October 25, 2017 judgment of the Putnam County Common Pleas Court sentencing him to twelve (12) years in prison after he was found guilty of Possession of Drugs (3 Counts), Trafficking in Drugs, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, and Having Weapons While Under Disability.

*Facts and Procedural History*

{¶2} On November 2, 2016, Valdez was indicted on seven criminal charges in Putnam County: Count One, Possession of Drugs (Cocaine), in violation of R.C. 2925.11(A) & (C)(4)(e), a felony of the first degree; Count Two, Possession of Drugs (Methamphetamine), in violation of R.C. 2925.11(A) & (C)(1)(b), a felony of the third degree; Count Three, Possession of Drugs (Oxycodone), in violation of R.C. 2925.11(A) & (C)(1)(b), a felony of the third degree; Count Four, Trafficking in Drugs, in violation of R.C. 2925.03(A)(2) & (C)(4)(f), a felony of the third degree; Count Five, Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. 2925.041, a felony of the third degree; Count Six, Tampering with Evidence, in violation of R.C. 291.12(A)(2), a felony of the third degree; and Count Seven, Having Weapons While Under a Disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree. A forfeiture specification, in violation of R.C. 2941.1417, was also contained in Count Four.

The charges stem from an October 15, 2016 traffic stop in Putnam County, Ohio. Valdez was a passenger in the vehicle involved in the traffic stop.

**{¶3}** Valdez pled not guilty to all charges and a jury trial was scheduled. On September 25, 2017 the case proceeded to a jury trial. At trial, in its case in chief, the State called Deputy Jared West ("Dep. West"), Det. Marvin Schweibert ("Det. Schweibert"), Todd Pingle, ("Pingle"), Deputy Troy Stevenson ("Dep. Stevenson"), Roy Sargent ("Sargent"), Aaron Giesige ("Giesige"), all with the Putnam County Sheriff's Office. The State's witnesses also included: Samuel Fortener "(Fortener")", with the Ohio Attorney General's Bureau of Criminal Investigation; Agent Ben Williams ("Williams"), with the Multi-Area Narcotics task force; Investigator Steven Mueller ("Mueller"), with the Defiance County Sheriff's Office; and Colleen Wiseman, with the Multi-Area Narcotics task force

**{¶4}** After the State presented its case, Valdez made a Rule 29 motion for acquittal on all counts. The trial court granted the motion only as to Count 6. Thereafter, Valdez presented his defense through the testimonies of Christina Valdez ("Christina"), Dakota Valdez ("Dakota"), Tasha Ellis ("Ellis") and Chelsea Campbell ("Campbell"). However, Valdez did not testify.

**{¶5}** The jury found Valdez guilty on all of the remaining charges, including the forfeiture specification and the case was scheduled for sentencing. Ultimately, the trial court sentenced Valdez to an aggregate prison term of twelve years,

journalized by its journal entry of October 25, 2017. It is from this judgment entry that Valdez appeals asserting the following assignments of error for our review.

*Assignment of Error No. I*

**THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE**

*Assignment of Error No. II*

**THE PROSECUTOR'S COMMENTS DURING CLOSING ARGUMENT CONSTITUTED PROSECUTORIAL MISCONDUCT.**

*First Assignment of Error*

{¶6} In his first assignment of error, Valdez claims that his guilty convictions are against the manifest weight of the evidence. Specifically, Valdez argues that the jury lost its way in evaluating the evidence against him. We disagree.

*Standard of Review*

{¶7} When determining whether a conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt". *State v. Eskridge*, 38 Ohio St.3d 56 (1988), at paragraph two of syllabus.

{¶8} In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as the "thirteenth juror" and examines the conflicting testimony. *State v. Thompkins*, 78 Ohio St.3d 380, 387. In taking on

this role, this court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in reviewing the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *Id.* In making this analysis, we must be mindful that determinations of credibility and weight of the testimony remain within the jurisdiction of the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶9} When applying the manifest weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction', should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶119. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) *Thompkins*, quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶10}** Furthermore, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins,* at paragraph 4 of the syllabus, citing Ohio Constitution, Article IV, Section 3(B)(3).

*Analysis*

**{¶11}** In this case, the jury was able to view and hear the testimony of all witnesses, which included the testimony of Valdez's half-brother and co-defendant, Dakota. Moreover, the jury was able to see and hear the testimony of Deputy West and Deputy Stevenson, along with additional law enforcement officers. As such, the jurors were in the position to believe the testimony offered by the State's witnesses. *State v. Bates*, 12th Dist. Butler No. CA2009-06-174, 2010-Ohio-1723, ¶11, quoting *State v. Bromagen*, 12th Dist. Clermont No. CA2005-09-087, 2006-Ohio-4429, ¶38 ("It is well-established that '[w]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony.'").

**{¶12}** In our review of the record, the State presented competent and credible evidence to the jury to convict Valdez of possession of cocaine (Count One); possession of methamphetamine (Count Two); possession of oxycodone (Count Three); trafficking in drugs (Count Four); illegal possession of chemicals for the

manufacture of drugs (Count Five); having weapons while under a disability (Count Seven); as well as the forfeiture specification in Count Four.

{¶13} The record reveals that Valdez was a passenger in a vehicle driven by Dakota Valdez when Dep. West initiated a traffic stop on October 15, 2016. During the stop, Valdez provided a false name and social security number to Dep. West. (Tr. Vol. I, pgs. 207-210; Vol. II, pgs. 7-10). A consent to search the stopped vehicle was obtained by Dep. West. The evidence discovered during the search included a black computer bag (which Valdez claimed ownership of), a scale, a jug of acetone, a bottle of inositol powder and a bag of cell phones with the batteries removed. State's witnesses testified that the scale, acetone and inositol powder are known to law enforcement as common items used in the manufacturing of illegal drugs. (Tr. Vol. I, pgs. 21-22; Vol. II, pgs. 135-136, 253). Further, Det. West testified that the evidence found on the cell phones located in the vehicle contained messages of drug slang, photos of large amounts of money, and photos of Valdez. (Tr. Vol. II, pgs. 56-57).

{¶14} Also testifying for the State was Roy Sargent with the Putnam County Sheriff's Office. Sargent testified that he reviewed Valdez's taped telephone conversations that occurred when (Valdez) was being held in the Putnam County Jail. Sargent stated that Valdez had multiple phone conversations with Alyssa (Valdez's sister), telling her that "he didn't have anything to worry about because

Dakota was going to take the blame for everything" (regarding the drug charges). Additionally, Sargent's testimony included the contents of a phone call between Valdez and a female wherein Valdez expressed concern that Dakota may testify against him. (Tr. Vol. III, pg. 156).

{¶15} Moreover, the State produced several witnesses with the Multi-Area Narcotics Task Force to educate the jury of "drug slang", the materials used in the manufacturing of illegal drugs, and the pricing of drugs. As such, the State provided the jury with sufficient evidence as to the charges set forth in the indictment arising from Valdez's encounter with police on October 15, 2016.

{¶16} In our review, we find competent and credible evidence exists in the record from which the jury could find Valdez guilty on the charges beyond a reasonable doubt. Accordingly, in reviewing the record we cannot find that the jury lost its way and that the convictions should be reversed. Valdez's first assignment of error is overruled.

*Assignment of Error No. II*

{¶17} In his second assignment of error, Valdez claims the prosecutor's comments made during closing arguments prejudiced his right to a fair trial. Specifically, Valdez asserts the State's comments to the jury during closing arguments constitute prosecutorial misconduct. We disagree.

*Standard of Review*

**{¶18}** "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected the accused's substantial rights". *State v. Liles*, 3d Dist. Allen No. 1-14-61, 2015-Ohio-3093, ¶31, citing *State v. Smith*, 14 Ohio St.3d 13, 14. "In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v Braxton*, 102 Ohio App.3d 28, 41 (1995).

**{¶19}** Furthermore, "'[t]o establish prejudice, a defendant must show that a reasonable probability exists that, but for the prosecutor's improper remarks, the result of the proceeding would have been different. Thus, "[n]ot every intemperate remark by counsel can be a basis for reversal."'" *Id*., quoting *State v. Porter*, 4th Dist. Meigs No. 10CA15, 2012-Ohio-1526, ¶20, quoting *State v. Landrum*, 53 Ohio St.3d 107, 112 (1990).

*Analysis*

**{¶20}** Prosecutorial misconduct is generally not grounds for reversal unless it so taints the proceedings as to deprive the defendant a fair trial. *State v. Johns*, 3d Dist. Seneca Nos. 13-04-23, 13-04, 24, 13-04-25, 2005-Ohio-1694, ¶25. Where it is clear beyond a reasonable doubt that the jury would have found the defendant

guilty, even absent the alleged misconduct, the defendant has not been prejudiced, and his conviction will not be reversed. See *State v. Underwood*, 2d Dist. Montgomery No. 24186, 2011-Ohio-5418, ¶21. When considering whether certain remarks constitute prosecutorial misconduct, a reviewing court must determine "(1) whether the remarks were improper and (2) if so, whether the remarks prejudicially affected the accused's substantial rights." *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, ¶141, citing *Smith*, *supra*. In *Jackson*, the Ohio Supreme Court noted that:

> "[t]he touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.' This court will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments". *Jackson*, ¶12.

**{¶21}** Furthermore, in reviewing allegations of prosecutorial misconduct, as it relates to closing arguments, "[p]arties have wide latitude in their closing statements, particularly 'latitude as to what the evidence has shown and what inferences can be drawn from the evidence.'". *State v. Plott*, 3d Seneca Nos. 13-15-39, 13-15-40, 2017-Ohio-38, ¶127, citing *State v. Wolff*, 7th Dist. Mahoning No. 07MA166, 2009-Ohio-7085, quoting *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266.

**{¶22}** In this case, Valdez alleges the following statement made by the prosecutor during closing arguments denied him of a fair trial:

> **"The Defendant had conversations while he was housed at the facility here in Putnam County, and in those conversations, what did Detective Sargent say he talked about? He talked about being concerned that Dakota was going to turn on him. Well, what's Dakota going to turn on him for and turn him in for if he didn't do anything? The Defendant made the statement in one of those conversations, I'll take a plea of four years. Why take a plea?"** (Tr. Vol. III, Pg. 212).

{¶23} Regarding Valdez's allegation, we begin by noting that defense counsel objected to the statement and the objection was sustained by the trial judge. Further, the trial court immediately cautioned the jury, and issued a curative instruction to the jurors to disregard the prosecutor's comment. Nevertheless, Valdez suggests that the prosecutor was commenting on a plea deal between Valdez and the State which could constitute prosecutorial misconduct. We find otherwise. In our review, it is evident that the prosecutor was commenting upon Valdez's jail conversations (as testified to by Sargent, see generally Tr. Pg. 156), wherein Valdez stated he would *only* consider a plea deal if he were to receive four years. The record is void of any plea negotiations between Valdez and the State. Thus, Valdez's jailhouse statements, while objectionable, were not plea negotiations, merely Valdez's opinions of an acceptable one. As such we find that the comments of the prosecutor do not rise to the level of misconduct and the trial judge appropriately disposed of the prosecutor's comment through a curative instruction.

{¶24} Accordingly, after reviewing the record, including the closing arguments, specifically the portion cited by Valdez on appeal, we find no error rising

to the level of prosecutorial misconduct. Moreover, even if the prosecutor's comments were questionable, (which we find the trial judge correctly addressed), Valdez has presented no evidence that the result of his trial would have been different but the for the prosecutor's comments. See *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445. Thus, we find Valdez received a fair trial and his second assignment of error is not well taken and overruled.

**{¶25}** Having found no error prejudicial to the appellant herein in the particular assignments of error, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**